# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

## CASE NO: _____

IN RE: MOTION TO QUASH
SUBPOENA FOR DEPOSITION
SERVED ON PETER DUNN

_____/

## MOTION TO QUASH FED. R. CIV. P. 45 SUBPOENA FOR DEPOSITION DIRECTED TO PETER DUNN OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Subpoena Issued in the United States District Court for the
Southern District of Florida, Case No. 20-cv-22995-KMW,
*Silva Harapeti v. CBS Television Stations Inc., et al.*

BAKER & MCKENZIE LLP
*Attorneys for CBS Television Stations, Inc.*
452 Fifth Avenue
New York, NY 10018
Telephone: (212) 626-4100
Facsimile: (212) 310-1632

Blair J. Robinson, Esq.
New Jersey Bar No. 040712004
blair.robinson@bakermckenzie.com

Paul C. Evans, Esq.
New Jersey Bar No. 121064946
paul.evans@bakermckenzie.com

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION AND BACKGROUND ............................................................. 2

PROCEDURAL POSTURE .................................................................................... 6

ARGUMENT ............................................................................................................ 9

   I.   THE APEX DOCTRINE OPERATES TO PROTECT MR. DUNN, A
       FORMER EXECUTIVE, FROM DEPOSITION. ................................................ 9

      A.   Harapeti Cannot Show that Mr. Dunn has Personal or Unique
           Knowledge Relevant to the Florida Action. ..................................... 13

      B.   The Apex Doctrine Requires Harapeti to Make an Effort to Obtain The
           Information Sought from Mr. Dunn Through Less Burdensome Means;
           She Has Not Done So Here. .............................................................. 21

  II.  TO THE EXTENT HARAPETI INTENDS TO RELY ON THE "SERVICE"
       OF THE FIRST SUBPOENA TO COMPEL MR. DUNN TO SIT FOR A
       DEPOSITION, SUCH SERVICE WAS INEFFECTIVE AND THE
       SUBPOENA SHOULD BE QUASHED. ............................................................ 23

   CONCLUSION ................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADT LLC v. Vivint, Inc.*,
   No. 17-cv-80432-DMM, 2017 U.S. Dist. LEXIS 216970 (S.D. Fla.
   Aug. 31, 2017) ...................................................................................10

*Brown v. Branch Banking & Trust Co.*,
   No. 13-cv-81192, 2014 U.S. Dist. LEXIS 7721 (S.D. Fla. Jan. 22,
   2014) ....................................................................................... 13, 22

*Ciarrocchi v. Unum Grp.*,
   2009 U.S. Dist. LEXIS 138532 (D.N.J. Aug. 27, 2009) ...................................21

*Conforti v. St. Joseph's Healthcare Sys., Inc.*,
   No. 2:17-cv-00050-CCC-CLW, 2019 U.S. Dist. LEXIS 138433
   (D.N.J. Aug. 15, 2019) .......................................................................11

*Cruz v. Sherea*,
   No. 18-60995-Civ-Moore/Snow, 2019 U.S. Dist. LEXIS 180197
   (S.D. Fla. Feb. 7, 2019).......................................................................10

*Farley-Skinner v. Adventure Aquarium, LLC*,
   No. 1:17-cv-04797-RBK-KMW, 2018 U.S. Dist. LEXIS 128847
   (D.N.J. Aug. 1, 2018).........................................................................23

*Finerman v. Marriott Ownership Resorts*,
   No. 3:14-cv-1154-J-32MCR, 2017 U.S. Dist. LEXIS 232168
   (M.D. Fla. June 6, 2017) ......................................................................8

*Fiorentino v. Cabot Oil & Gas Corp.*,
   No. 3:09-CV-2284, 2012 U.S. Dist. LEXIS 194219 (M.D. Pa. Jan.
   6, 2012)........................................................................................24

*Ford Motor Co. v. Edgewood Props.*,
   Civ. No. 06-1278, 2011 U.S. Dist. LEXIS 67227 (D.N.J. June 23,
   2011) .......................................................................................*passim*

*United States ex rel. Galmines v. Novartis Pharms. Corp.*,
No. CV 06-3213, 2015 U.S. Dist. LEXIS 109997 (E.D. Pa. Aug.
20, 2015) ....................................................................................... 10, 11, 12, 20

*George v. Pa. Tpk. Comm'n*,
No. 1:18-CV-766, 2020 U.S. Dist. LEXIS 92041 (M.D. Pa. May
27, 2020) ..................................................................................................... 11, 12, 14

*Havens v. Mar. Commc'ns/Land Mobile, LLC*,
Civ. No. 11-993 (KSH) (CLW), 2014 U.S. Dist. LEXIS 68786
(D.N.J. May 20, 2014) .................................................................................. 24

*Kelsey v. Donley*,
No. 09-21125-CIV, 2009 U.S. Dist. LEXIS 69878 (S.D. Fla. July
30, 2009) ........................................................................................................ 8

*Mallory v. Wells Fargo Bank, N.A.*,
No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332 (M.D. Pa. June
17, 2021) ........................................................................................... 8, 10, 21

*Myer v. Kuang*,
No. 19-9385, 2021 U.S. Dist. LEXIS 54382 (D.N.J. Mar. 23, 2021) .......... 23, 25

*Nationwide Ins. Co. v. Seven-Up Bottling Co.*,
Civ. No. 91-2267, 1993 U.S. Dist. LEXIS 3839 (E.D. Pa. Mar. 17,
1993) .............................................................................................................. 7

*Office Depot, Inc. v. Elemetum Ltd.*,
No. 9:19-cv-81305, 2020 U.S. Dist. LEXIS 167215 (S.D. Fla.
Sept. 14, 2020) .............................................................................................. 13

*Reif v. CNA*,
248 F.R.D. 448 (E.D. Pa. 2008) ...................................................... 11, 20, 21, 26

*Rodriguez v. SLM Corp.*,
No. 3:07CV1866 (WWE), 2010 U.S. Dist. LEXIS 29344 (D.
Conn. Mar. 26, 2010) ................................................................................. 10

*Silva Harapeti v. CBS Television Stations, Inc., et al.*,
No. 20-cv-22995 .......................................................................................i, 1, 30

iv

*Skytruck Co. v. Sikorsky Aircraft Corp.*,
No. 2:09-cv-267-FtM-99SPC, 2011 U.S. Dist. LEXIS 160482
(M.D. Fla. May 11, 2011) ................................................................22

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
310 F.R.D. 523 (S.D. Fla. Sept. 15, 2015)...................................13, 20

*Taggart v. Wells Fargo Home Mortg., Inc.*,
No. 10-cv-00843, 2012 U.S. Dist. LEXIS 139469 (E.D. Pa. Sept.
27, 2012)...........................................................................................10

*Tompkins v. Don Cesar Resort Hotel*,
No. 8:10-CV-06460T-30EAJ, 2010 U.S. Dist. LEXIS 162780
(M.D. Fla. 2010) ..............................................................................20

*Trs. of the Int'l Union v. J.T. Cleary, Inc.*,
No. 17-5962 (ES) (MAH), 2018 U.S. Dist. LEXIS 69966 (D.N.J.
Apr. 26, 2018)...................................................................................24

*Vitale v. Repetti*,
No. 05-5685 (PGS) (ES), 2007 U.S. Dist. LEXIS 43839 (D.N.J.
June 18, 2007)..............................................................................24, 25

*Yarus v. Walgreen Co.*,
No. 14-cv-1656, 2015 U.S. Dist. LEXIS 86247 (E.D. Pa. July 1,
2015) ............................................................................................7, 25

*Younes v. 7-Eleven, Inc.*,
Civ. Nos. 13-3500, 13-3715, 13-4578 (RMB/JS), 2015 U.S. Dist.
LEXIS 191811 (D.N.J. Aug. 19, 2015) ......................... 10, 14, 19, 20

*Young v. Pleasant Valley Sch. Dist.*,
No. 3:07-CV-854, 2011 U.S. Dist. LEXIS 46172 (M.D. Pa. Apr.
29, 2011)...........................................................................................25

## Statutes

28 U.S.C. § 636(b)(1)(C) ..........................................................................3

29 U.S.C. § 216(b)....................................................................................3

Age Discrimination in Employment Act ................................................3, 14

Civil Rights Act of 1964 Title VII ....................................................................3, 14

Equal Pay Act 1936, 29 U.S.C. §§ 206, *et seq.* ........................................3, 14, 15

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ......................................*passim*

Florida Civil Rights Act of 1992 ....................................................................3, 14

## Other Authorities

11th Cir. R. 3-1 ...................................................................................................3

Fed. R. Civ. P. 26.............................................................. 1, 2, 11, 12, 27

Fed. R. Civ. P. 30.........................................................................*passim*

Fed. R. Civ. P. 45.........................................................................*passim*

S.D. Fla. L.R. 26.1(h).........................................................................7

Pursuant to Rules 26(c)(1) and 45(d)(3)(A) of the Federal Rules of Civil Procedure, CBS Television Stations Inc., CBS Broadcasting, Inc., and CBS Corporation (collectively, "Movant" or "CBS"), by and through undersigned counsel, hereby file this Motion to Quash or, in the Alternative, Motion for Protective Order ("Motion") and respectfully request that this Court quash the non-party subpoenas dated July 27, 2021 and August 10, 2021 directed to Peter Dunn (the "First Subpoena" and the "Subpoena," respectively) issued by Silva Harapeti, Plaintiff in the case styled *Silva Harapeti v. CBS Television Stations, Inc., et al.*, No. 20-cv-22995, currently pending before the United States District Court for the Southern District of Florida (the "Florida Action").[1]  A copy of the First Subpoena is attached hereto as **Exhibit A**, and a copy of the Subpoena is attached hereto as **Exhibit B**.  Non-party Peter Dunn ("Mr. Dunn") is one of Movant's former executives and resident of New Jersey and, therefore, this District is the proper venue for this Motion.[2]

---

[1] The First Subpoena was issued by Harapeti in a separate case, Case No. 20-cv-20961 (S.D. Fla.).  *See infra* n.5.

[2] "[T]he court for the district *where compliance is required* must enforce th[e] duty" to avoid undue burden.  Fed. R. Civ. P. 45(d)(1) (emphasis added).  Likewise, Rule 26 provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—*or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.*" Fed. R. Civ. P. 26(c)(1) (emphasis added). This Court, therefore, is the proper venue for this Motion.  *See id.*; Fed. R. Civ. P. 45(c)(1)(A); *see also* Notes of Advisory Committee on 2013 Amendments to Fed. R. Civ. P. 45 ("To protect

## INTRODUCTION AND BACKGROUND

Apparently dissatisfied with her limited discovery efforts, Silva Harapeti ("Harapeti") now seeks to unduly burden and harass both Movant and one of Movant's former executives, Mr. Dunn, with a deposition.  Yet, all of the discovery taken to date makes it abundantly clear that Mr. Dunn harbors no personal or unique knowledge relevant to Harapeti's underlying allegations in the Florida Action, a fact that Mr. Dunn himself confirms in a declaration submitted herewith.  The robust protections of the apex doctrine operate to safeguard Movant and its executives, such as Mr. Dunn, from depositions where it is evident that the deponent has no personal knowledge relevant to the issues at hand.  Simply by virtue of his former position, the apex doctrine establishes a presumption that Mr. Dunn's deposition is unduly burdensome under Rule 45 of the Federal Rules of Civil Procedure and that Movants are otherwise entitled to a protective order under Rule 26(c)(1).  Harapeti cannot overcome this presumption here and, therefore, the Subpoena should be quashed.

Harapeti previously worked as a freelance[3] news reporter and producer at the CBS-owned-and-operated television station located in Miami, Florida:  WFOR-TV

_____

local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c).").

[3] The term "freelance" refers to those employees who were paid a day rate, otherwise known as "per diem," *i.e.*, employees who received a set amount of pay for each day

2

("WFOR").   On May 26, 2020, Plaintiff commenced the Florida Action in the U.S. District Court for the Southern District of Florida, alleging age and gender discrimination and retaliation claims under the Equal Pay Act 1936, 29 U.S.C. §§ 206, *et seq.* ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act of 1992 ("FCRA").   Although Harapeti originally filed her EPA claim in the Florida Action as collective action under 29 U.S.C. § 216(b) seeking to certify a nationwide class of female news reporters or producers who from any time between 2011 and the present were not paid equally when compared to their male counterparts, the Court in the Florida Action denied and dismissed Harapeti's class claim.   *See* Florida Action, at (ECF No. 64, Order Adopting Report & Recommendation) (denying Harapeti's motion for conditional certification) and (ECF No. 73, Report & Recommendation on Motion to Dismiss) (recommending dismissal of all of Harapeti's collective action claims).[4]   Thus, the matters material to the Florida Action are Harapeti's employment; her pay and the pay of other male (gender-based

---

they worked, regardless of the number of hours.  *See* Florida Action, at (ECF No. 40, Harapeti's Third Amended Complaint) at ¶¶ 18–19.

[4] While the Report & Recommendation (ECF No. 73) recommending dismissal of all of Harapeti's collective action claims has yet to be adopted by the District Judge in the Florida Action, Harapeti did not object to the recommendation.  Thus, Harapeti is barred from having a *de novo* review of the recommendation performed by the District Judge in the Florida Action and further barred from challenging the decision on appeal. *See* 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1.

claims) and younger female (age-based claims) freelance reporters and producers at WFOR in Miami; and the individualized allegations of discrimination and harassment allegedly suffered by Harapeti at the hands of her supervisors at WFOR and nobody else.  Discovery to date, along with Mr. Dunn's declaration attached hereto, demonstrates Mr. Dunn has no knowledge relevant to any of these topics.  In light of any actual connection to the Florida Action, as set forth more fully below, it is clear that the only purpose behind Mr. Dunn's deposition is harassment.[5]

The apex doctrine counsels a court to exercise the appropriate mechanisms to protect Movant and its executives such as Mr. Dunn (1) where the executive lacks "personal or unique knowledge on relevant subject matters," and (2) if the party seeking the executive's deposition has not first exhausted "less burdensome means."

---

[5] Harapeti also filed another case on January 29, 2020 against CBS Television Stations, Inc. *et al.*, Case No. 20-cv-20961 (S.D. Fla.) alleging overtime violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (the "FLSA Action").  As described *infra*, Harapeti originally issued the Subpoena in the FLSA Action.  Due to procedural infirmities, see *infra*, Harapeti was forced to re-issue the Subpoena, and did so in the Florida Action as opposed to the FLSA Action as she originally did, presumably in order to avoid the August 13, 2021 discovery deadline in the FLSA Action.  (The discovery deadline in the Florida Action is not until August 30, 2021, and the Subpoena sets Mr. Dunn's deposition for August 24, 2021. While the parties have agreed that discovery taken in one action is admissible in the other, the two cases have not been consolidated for purposes of discovery.) Regardless of which lawsuit Harapeti intends for the Subpoena to relate to, it is evident that Mr. Dunn has no knowledge of, or involvement in, any employment decisions concerning Harapeti herself or the pay of freelance news reporters and producers at WFOR. *See infra* Argument, Section I(A). Therefore, Mr. Dunn lacks any "personal or unique knowledge" relevant to the FLSA Action such that his deposition would be permissible under the apex doctrine in that lawsuit.

4

*See Ford Motor Co. v. Edgewood Props.*, Civ. No. 06-1278, 2011 U.S. Dist. LEXIS 67227, at *12 (D.N.J. June 23, 2011). Harapeti can satisfy neither prerequisite.

Mr. Dunn is the former President of the "CBS Televisions Stations" business unit within ViacomCBS.  His responsibilities were those one would expect of an executive in his position—high-level strategy, budgetary issues, and executive-level management with respect to the 29-owned-and-operated television stations located throughout the United States.  Mr. Dunn was not involved in the day-to-day minutiae of managing WFOR's individual employees, including Harapeti, nor was he involved in determining the pay or the hiring and/or firing of freelance news reporters and producers, *including Harapeti*, at WFOR.  Mr. Dunn confirms his lack of involvement in all of the underlying conduct that may be relevant to Harapeti's claims in the Florida Action.  All of the local upper-level management at WFOR deposed to date have confirmed the same—Mr. Dunn was not involved, and has no knowledge of, any subject matter relevant to the Florida Action.  Nor has Harapeti made any effort to obtain the discovery she seeks from Mr. Dunn through less intrusive means such as a Rule 30(b)(6) corporate representative or through interrogatories to the Movant.  In circumstances such as this, as explained more fully below, the well-recognized protections of the apex doctrine apply and require that the Subpoena be quashed.

Moreover, to the extent Harapeti wishes to rely on the service purportedly accomplished on Mr. Dunn on August 4, 2021, such service was legally ineffective as Harapeti failed to personally serve Mr. Dunn. This Court has a vested interest in protecting its residents from errant subpoenas issued by far-away litigants who elect to ignore the law of this Circuit.

## PROCEDURAL POSTURE

On June 15, 2021, Harapeti served a Notice of Deposition for the deposition of Mr. Dunn in the FLSA Action, scheduling the same for August 11, 2021. *See* Declaration of Blair Robinson, Esq., attached hereto as **Exhibit C**, at ¶ 4. On July 20, 2021, Harapeti's counsel was advised that Mr. Dunn was no longer employed by CBS and that his attendance at deposition could not be compelled via notice, but Mr. Dunn would need to be subpoenaed. *Id.* at ¶ 5.

On August 10, 2021, at approximately 9:15 AM, Harapeti's counsel, *for the first time*, notified undersigned counsel that a subpoena had been issued for Mr. Dunn's deposition in the FLSA Action (the "First Subpoena") and that such subpoena scheduled Mr. Dunn's deposition the very next day, on August 11, 2021. *Id.* at ¶ 6. Although the Certificate of Service annexed to the First Subpoena certifies that the First Subpoena was emailed to the undersigned on July 27, 2021 (**Ex. A**, First Subpoena), this is untrue. At no point prior to the August 10th email did Harapeti's counsel notify the undersigned that the First Subpoena had been issued

or that Mr. Dunn's deposition was scheduled for August 11, 2021.  *See* **Ex. C**, Robinson Decl., at ¶ 6.

Immediately upon receiving the First Subpoena, undersigned counsel advised counsel for Harapeti of his obligations under the Local Rules of the issuing Court, the U.S. District Court for the Southern District of Florida.  *Id.* at ¶ 7.  Specifically, Harapeti's counsel was reminded that pursuant to Local Rule 26.1(h), "a party desiring to take the deposition in another State of any person upon oral examination *shall give at least fourteen (14) days' notice in writing to every other party to the action and the deponent* (if the deposition is not of a party)."  *See id.* (quoting S.D. Fla. L.R. 26.1(h)) (emphasis added).[6]

---

[6] Moreover, Harapeti's purported "service" of the First Subpoena on August 4, 2021 and attempt to command Mr. Dunn to appear for deposition on August 11, 2021 *in a case pending in Florida that he is not a party to* a mere five (5) business days later was patently unreasonable under Rule 45.  *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (requiring a court to quash a subpoena that "fails to allow a reasonable time to comply").  Because Harapeti provided Mr. Dunn with only seven (7) days to comply—and only five (5) business days—the First Subpoena would have been due to be quashed.  *See, e.g.*, *Nationwide Ins. Co. v. Seven-Up Bottling Co.*, Civ. No. 91-2267, 1993 U.S. Dist. LEXIS 3839, at *4-5 (E.D. Pa. Mar. 17, 1993) (modifying subpoena under Rule 45 where, in part, it directed deponent to appear for a deposition five days later); *Yarus*, 2015 U.S. Dist. LEXIS 86247, at *12 (rescheduling a deposition where, "though her initial subpoena was properly served, it set forth a deposition date only a few days after the date of service").  Indeed, as noted, the Local Rules for the Southern District of Florida, where the Subpoena was issued, demonstrate that this time amount of notice was facially inappropriate.  Given that Harapeti has issued another subpoena (the Subpoena) to Mr. Dunn for a deposition on August 24, 2021, see *infra*, this issue is now moot.

Upon realizing the obvious noncompliance with applicable Local Rules, on August 10, 2021, Harapeti issued another subpoena for Mr. Dunn's deposition—the Subpoena. *See id.* at ¶ 8. Unlike the First Subpoena, the Subpoena was issued not in the FLSA Action. *Id.* Instead, the Subpoena was issued in the Florida Action. *See id.* The Subpoena schedules Mr. Dunn's deposition for August 24, 2021. *See id.*

As of this submission, it is unclear whether Mr. Dunn has been served with the Subpoena, or whether Harapeti intends to rely on the "service" of the First Subpoena that was purportedly accomplished on August 4, 2021.[7] To the extent Harapeti intends to rely on the "service" of the First Subpoena, such service was legally ineffective, *infra* Argument Section II, and improper for the additional reason

---

[7] Mr. Dunn is no longer employed by CBS. Therefore, to the extent the Subpoena references a "Notice of Deposition," such a notice is insufficient to compel Mr. Dunn's deposition under Federal Rule of Civil Procedure 30 under both Third Circuit and Eleventh Circuit precedent. *See Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332, at *5 n.2 (M.D. Pa. June 17, 2021) (crediting defendant's argument that "'the Notices issued to the former CEOs are all procedurally improper as these individuals are no longer employed by [defendant]' . . . [T]he proper course of action to depose such former CEOs would have been to subpoena them pursuant to Federal Rule of Civil Procedure 45.") (citations omitted); *Kelsey v. Donley*, No. 09-21125-CIV, 2009 U.S. Dist. LEXIS 69878, at *3-4 (S.D. Fla. July 30, 2009) (citing Fed. R. Civ. P. 30(a)(1)) (noting that the "proper way" to secure a non-party former employee's appearance "is through a subpoena, rather than by a notice of deposition . . ."); *see also Finerman v. Marriott Ownership Resorts*, No. 3:14-cv-1154-J-32MCR, 2017 U.S. Dist. LEXIS 232168, at *4 n.1 (M.D. Fla. June 6, 2017) (holding that plaintiffs "failed to show that they have issued a valid non-party subpoena for the supplemental deposition of [the corporation's former vice president], a prerequisite to compelling a non-party deposition") (collecting cases).

that the First Subpoena was not issued in the Florida Action.  (It is obvious that Harapeti served the Subpoena in the Florida Action as opposed to the FLSA Action in order to avoid the FLSA Action's discovery deadline of August 13, 2021.)

Regardless of whether Harapeti intends to rely on the August 4th service of the First Subpoena, or intends to serve Mr. Dunn with the Subpoena, the result is the same—the Subpoena (and/or the First Subpoena) should be quashed, or a protective order granted, pursuant to the apex doctrine.  (The First Subpoena can, and should, be quashed for the additional reason that "service" upon Mr. Dunn was legally ineffective under Third Circuit law.)

## **ARGUMENT**

### I. THE APEX DOCTRINE OPERATES TO PROTECT MR. DUNN, A FORMER EXECUTIVE, FROM DEPOSITION.

Mr. Dunn is the former President of the "CBS Televisions Stations" business unit within ViacomCBS, which, during all relevant times, was responsible for overseeing, at a high level, the 29 local television stations operating in 17 different cities throughout the United States.[8]  *See* Declaration of Peter Dunn ("Dunn Decl."), attached hereto as **Exhibit D**, at ¶¶ 2–5.  In this role, Mr. Dunn was not involved in the day-to-day management of each individual television station, including with

---

[8] These local television stations are owned by a patchwork of CBS-affiliated legal entities.  The station where Plaintiff worked, WFOR, is owned by CBS Television Stations, Inc., one of the named defendants in the Florida Action.

respect to the management of local personnel, nor the hiring of news reporters and producers. *See id.* at ¶¶ 4–6. Put simply, Mr. Dunn is the precise type of high-level executive the apex doctrine is designed to protect.[9]

---

[9] That Mr. Dunn is no longer employed by CBS does not negate application of the doctrine in the slightest—the protections of the apex doctrine apply to former high-ranking corporate officials. *See, e.g.*, *Younes v. 7-Eleven, Inc.*, Civ. Nos. 13-3500, 13-3715, 13-4578, (RMB/JS), 2015 U.S. Dist. LEXIS 191811, at *12–13 (D.N.J. Aug. 19, 2015) (denying deposition of a former executive vice president and chief operating officer who had no personal and unique knowledge that could not be obtained from other witnesses); *Novartis Pharms. Co.*, 2015 U.S. Dist. LEXIS 109997, at *2, *6–8 (quashing the deposition of the defendant's former CEO); *Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332, at *5 (M.D. Pa. June 17, 2021) (applying the apex doctrine to grant a motion to quash and for a protective order for, *inter alia*, three former CEOs); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2012 U.S. Dist. LEXIS 139469, at *11, *14 (E.D. Pa. Sept. 27, 2012) (granting motion for protective order to prevent the deposition of the defendant corporation's former vice president, who had no first-hand knowledge of the relevant facts). The same is true under Eleventh Circuit precedent. *See ADT LLC v. Vivint, Inc.*, No. 17-cv-80432-DMM, 2017 U.S. Dist. LEXIS 216970, at *3–4 (S.D. Fla. Aug. 31, 2017) (granting protective order to prevent depositions of three former corporate officials where the party seeking their depositions failed to exhaust less intrusive means of obtaining the information sought, including by failing to depose a Rule 30(b)(6) corporate representative); *Cruz v. Sherea*, No. 18-60995-Civ-Moore/Snow, 2019 U.S. Dist. LEXIS 180197, at *8–9 (S.D. Fla. Feb. 7, 2019) ("[A] former high ranking public official . . . is entitled to heightened protection from deposition even after leaving that office, similar to the ongoing protections afforded to former executives in the private sector."). Indeed, "[t]he standards that govern depositions of corporate executives apply with equal force to former executives." *Rodriguez v. SLM Corp.*, No. 3:07CV1866 (WWE), 2010 U.S. Dist. LEXIS 29344, *6 (D. Conn. Mar. 26, 2010) (granting defendants' motion for a protective order quashing the deposition subpoenas of two former senior-level executives).

The robust protections of the apex doctrine exist to shield high-level corporate executives from depositions where they lack personal and unique knowledge on subject matter relevant to the lawsuit at hand.  The doctrine "recognizes that depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries may use this severe burden to their unfair advantage." *George v. Pa. Tpk. Comm'n*, No. 1:18-CV-766, 2020 U.S. Dist. LEXIS 92041, at *5 (M.D. Pa. May 27, 2020)  (quoting *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. CV 06-3213, 2015 U.S. Dist. LEXIS 109997, at *3 (E.D. Pa. Aug. 20, 2015)).   Accordingly, the doctrine "cautions *against* lightly granting requests" to depose a high-ranking corporate executive.  *Id.*, at *7 (emphasis added); *see also Reif v. CNA*, 248 F.R.D. 448, 453 (E.D. Pa. 2008) (noting that courts "have the discretion to prevent oppressive, harassing, inconvenient, and burdensome depositions of executive officials").[10]

Under Rule 45 of the Federal Rules of Civil Procedure, the Court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Similarly, Rule 26 provides that this Court "may, for good cause,

---

[10]  Additionally, courts generally "afford greater protection to non-parties in discovery." *Conforti v. St. Joseph's Healthcare Sys., Inc.*, No. 2:17-cv-00050-CCC-CLW, 2019 U.S. Dist. LEXIS 138433, at *2 (D.N.J. Aug. 15, 2019).  Indeed, as this District acknowledges, "nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Id.*  As Mr. Dunn is not a party to the Florida Action, Plaintiff must show that Mr. Dunn's testimony is highly relevant to the Florida Action—a burden Plaintiff cannot meet.  *See infra.*

issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."   Fed. R. Civ. P. 26(c)(1). The apex doctrine, in turn, carries "a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue absent the two factors set forth in the apex doctrine, which go to the lack of a more convenient, less burdensome, and less expensive alternative."   *Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 109997, at *4; *see also George*, 2020 U.S. Dist. LEXIS 92041, at *5 (apex depositions "severely burden[] those officers and the entities they represent" (quotation and citation omitted)).

Specifically, in order for the executive's deposition to be appropriate under the doctrine, the party seeking to take the deposition must make a showing on two elements:  (1) that "the executive or top-level employee has personal or unique knowledge on relevant subject matters"; and (2) that the information sought cannot "be obtained from lower-level employees or through less burdensome means, such as interrogatories."   *Ford Motor Co. v. Edgewood Props.*, Civ. No. 06-1278, 2011 U.S. Dist. LEXIS 67227, at *12 (D.N.J. June 23, 2011) (citation and quotation omitted); *see also George*, 2020 U.S. Dist. LEXIS 92041, at *7–8 (noting that apex depositions "are disfavored and require a showing of two factors: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and

2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods").[11]

Harapeti cannot satisfy either, let alone both elements necessary to avoid the doctrine in the context of Mr. Dunn's deposition—Mr. Dunn has absolutely no unique knowledge of the subject matter of the Florida Action, nor has Harapeti made any effort to obtain whatever information she believes Mr. Dunn possesses through less intrusive means, such as, but not limited to, a corporate representative deposition under Federal Rule of Civil Procedure 30(b)(6) or interrogatories to the named defendants in the Florida Action.

## A.    Harapeti Cannot Show that Mr. Dunn has Personal or Unique Knowledge Relevant to the Florida Action.

It is evident that Mr. Dunn has absolutely no knowledge of facts relevant to the subject matter of the Florida Action.  As to the first prong, that the executive

---

[11] The apex doctrine standard is the same in the Eleventh Circuit, where the Florida Action is pending.  *See Office Depot, Inc. v. Elemetum Ltd.*, No. 9:19-cv-81305, 2020 U.S. Dist. LEXIS 167215, at *8 (S.D. Fla. Sept. 14, 2020) (providing that a party seeking to depose a high-ranking corporate officer "has the burden to demonstrate that the executive: (1) has unique, non-repetitive, first-hand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success" (internal quotation and citation omitted)); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. Sept. 15, 2015); *Brown v. Branch Banking & Trust Co.*, No. 13-cv-81192, 2014 U.S. Dist. LEXIS 7721, at *7 (S.D. Fla. Jan. 22, 2014) (citation omitted) (noting that since high-ranking officers, "by virtue of their position," are "vulnerable to numerous, repetitive, harassing, and abusive depositions," they "therefore need some measure of protection from the courts").

possesses *some* knowledge of relevant facts is insufficient to override the protections of the apex doctrine. The doctrine requires more, and courts have precluded depositions of executives who have "had some familiarity" with relevant issues but nonetheless lack "superior or unique knowledge" of the events in question. *See George*, 2020 U.S. Dist. LEXIS 92041, at *8 (precluding deposition of executive with "some familiarity" concerning two firing decisions where his knowledge "appear[ed] to be inferior to that of the actual decision-maker"); *Younes v. 7-Eleven, Inc.*, Civ. Nos. 13-3500, 13-3715, 13-4578, (RMB/JS), 2015 U.S. Dist. LEXIS 191811, at *12 (D.N.J. Aug. 19, 2015) ("The fact that [the former executive] may have signed off on some paperwork is not a sufficient reason to depose him."); *Ford Motor Co.*, 2011 U.S. Dist. LEXIS 67227, at *14 (finding that the executive's signature on a relevant memorandum was not proof of "personal or unique knowledge").

Harapeti's claims in the Florida Action concern discrete instances of alleged discrimination, including discrimination concerning Harapeti's pay based on her age and gender under the ADEA, EPA, and FCRA (Counts I, III, IV, & V); discrete instances of failure to promote based on her age under the ADEA and FCRA (Counts I & VII); additional sex-based discrimination claims predicated on specific instances of discrimination actionable under Title VII and the FCRA (Counts II & VIII); and retaliation pursuant to Title VII and the FCRA (Counts VI & IX). *See* Florida

Action, at (ECF No. 40, Third Amended Complaint).  Stated simply, the Florida Action involves claims unique to Harapeti's experience at WFOR, including individualized claims of age and gender-based discrimination and retaliation, all of which involve only Harapeti and her most immediate supervisors at WFOR—and Harapeti and her local supervisors *only*.[12]

In his former capacity as President of the "CBS Televisions Stations" business unit, Mr. Dunn had the type of responsibilities that come with holding an executive position, and was responsible for high-level oversight of over 29 local television stations.  *See* **Ex. D**, Dunn Decl., at ¶¶ 2–5.   Mr. Dunn confirms that he was not involved in the management of local personnel, including those personnel at WFOR.  *See id.* at ¶ 5.  Critically, Mr. Dunn's responsibilities did not concern Harapeti's employment at WFOR, nor does he possess any knowledge of anything relating to Harapeti's employment at WFOR—even further, Mr. Dunn had no idea who Harapeti was prior to learning of the Florida Action.  *See id.* at ¶¶ 6–7.  Mr. Dunn was not involved in, and has no knowledge of Harapeti's pay—or, as may be relevant, the pay of other reporters and producers at WFOR, such as those individuals Harapeti contends are male and/or younger comparators—nor does he

---

[12] As noted in the Introduction and Background, *supra*, while Harapeti's Florida Action was originally presented as a collective claim under the EPA, the Court in the Florida Action denied Harapeti's request and such claims have been dismissed. Accordingly, the Florida Action is proceeding on Harapeti's individual claims only.

have knowledge of any complaints Harapeti may have raised while employed at WFOR. *See id.* at ¶¶ 5–6. As Mr. Dunn himself explains, his responsibilities did not involve granular decisionmaking at the local station level such that he would be involved in, or have knowledge of, any facts relevant to the Florida Action. *See id.* at ¶¶ 4–6. Thus, Mr. Dunn lacks any "personal or unique knowledge" of the allegations presented in the Florida Action, which concern *local* employment decisions regarding Harapeti and Harapeti alone.

The deposition testimony taken in the Florida Action—including from Harapeti herself—confirms that Mr. Dunn lacks the requisite "personal or unique knowledge" to render his deposition appropriate under the apex doctrine. This Court need not look any further than Harapeti herself—at her deposition, Harapeti confirmed that she had no knowledge as to whether Mr. Dunn was involved in any decision related to her employment at WFOR:

> **Q:** My . . . question is whether or not you know if Peter Dunn specifically was involved in any employment decision related to you at WFOR?
>
> **A:** <u>I do not.</u>

*See* Deposition Transcript of Silva Harapeti, June 22, 2021, attached hereto as **Exhibit E**, at 23:23-24:1 (emphasis added).

Testimony from WFOR's managers and supervisors also confirms that Mr. Dunn possesses no knowledge relevant to the dispute in the Florida Action. For

nearly a decade, until approximately December of 2020, Elizabeth Roldan ("Ms. Roldan") was employed at WFOR as the News Director responsible for managing news personnel at WFOR.  *See* Deposition Transcript of Elizabeth Roldan, July 6, 2021, attached as **Exhibit F**, at 12:7–13:9.  Ms. Roldan confirmed that, to her knowledge, Mr. Dunn was not involved in any employment decision relating to Harapeti:

> **Q:**   Ms. Roldan, do you have any knowledge as to whether Peter Dunn was consulted on any employment decision involving Silva Harapeti?
>
> **A:**   No.

*See id.* at 97:11–14. Ms. Roldan also confirmed that Mr. Dunn was not involved in decisions involving freelance reporters or producers at WFOR:

> **Q:**   Do you have any knowledge as to Peter Dunn being involved in the hiring of per diem reporters at WFOR?
>
> **A:**   No.
>
> *   *   *
>
> **Q:**   "Do you have any knowledge of Peter Dunn being involved in decisions about what to pay per diem reporters or producers at WFOR?"
>
> **A:**   "No."

*Id.* at 97:19–22, 98:2–5.  Adam Levy ("Mr. Levy"), the General Manager of WFOR during all relevant time periods who reported to Mr. Dunn, Deposition Transcript of

Adam Levy, June 15, 2021, attached hereto as **Exhibit G**, at 9:10–19, 10:24–25, also

verified that Mr. Dunn lacks any knowledge pertinent to the Florida Action:

> **Q:** . . . Have you had any discussions with Peter Dunn about Silva Harapetian at any point in time?
>
> **A:** No.
>
> *   *   *
>
> **Q:** Do you have any information to suggest that Peter [Dunn] [] [] w[as] consulted on any employment decisions involving Silva Harapetian?
>
> **A:** No.
>
> *   *   *
>
> **Q:** To your knowledge, was Peter Dunn involved in decisions about what to pay per diem reporters or producers at WFOR?
>
> **A:** No.
>
> *   *   *
>
> **Q:** To your knowledge, was Peter Dunn involved in the hiring of per diem reporters at WFOR?
>
> **A:** No.

*Id.* at 77:25–78:2, 78:6–78:9, 78:16–78:19.  Consistent with Mr. Dunn's description

of his role as President, Mr. Levy noted that his reports to Mr. Dunn as General

Manager were limited to higher-level subjects, such as "budgeting information,

revenue forecasts, profit, things like that," as well as "station margin, profit margin

that is, ratings, strategic plans." *Id.* at 11:15–12:2; *see also id.* at 42:4–9 (Q: "Would

Peter Dunn also be involved with how much a per diem news reporter was paid at

WFOR specifically with respect to the budget of WFOR-TV?" . . . THE WITNESS:

18

"No."). The testimony of Ms. Roldan and Mr. Levy—and perhaps most importantly, of Harapeti herself—confirms that there is no nexus between the decisions relating to Harapeti at issue in the Florida Action and Mr. Dunn.  The record in the Florida Action does not suggest that Mr. Dunn possesses knowledge of Harapeti's employment at WFOR or any other facts material to the Florida Action, let alone the "personal or unique knowledge" necessary for Harapeti to overcome the presumption that the apex doctrine establishes.

Mr. Dunn's lack of knowledge on these issues renders any deposition unnecessary, unduly burdensome, inconvenient, and harassing within the meaning of Rule 45.  The complete absence of overlap between the matters at issue in the Florida Action and Mr. Dunn's responsibilities as President overseeing the 29 CBS owned-and-operated television stations nationwide, and the knowledge he possesses as a result of that role, confirms that the only reason Harapeti is pursuing Mr. Dunn's deposition is for purposes of harassment.  Mr. Dunn's testimony would not bear on the particularized allegations in the Florida Action as Mr. Dunn lacks any "relevant knowledge to add to what [Harapeti] already know[s]" from the depositions already taken in this case. *See Younes*, 2015 U.S. Dist. LEXIS 191811, at *11–12.  Absent knowledge or involvement in Harapeti's employment at WFOR, or knowledge of any decisions at issue in the Florida Action, Harapeti is incapable of  "specifically t[ying] any information sought from [Mr. Dunn] to any material matter in the case,"

19

and his deposition is inappropriate *Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 109997, at *6.   Accordingly, Dunn is entitled to apex protection and the Subpoena must be quashed.   *See Ford Motor Co.*, 2011 U.S. Dist. LEXIS 67227, at *12; *Younes*, 2015 U.S. Dist. LEXIS 191811, at *12 (applying the two-prong test and denying motion to compel the depositions of current and former corporate executives); *Reif*, 248 F.R.D. at 454 (requiring plaintiffs to show the executive "possessed any special or personal unique knowledge of the [plaintiff's] termination"); *see also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. Sept. 15, 2015) (granting motion to quash and for a protective order where the plaintiff failed to show that high-ranking executives had unique, non-repetitive firsthand knowledge about the matters at issue).[13]

---

[13]   Although not binding on this Court, the case of *Tompkins v. Don Cesar Resort Hotel*, No. 8:10-CV-06460T-30EAJ, 2010 U.S. Dist. LEXIS 162780 (M.D. Fla. 2010), is particularly instructive.   In *Tompkins*, the plaintiff sought to depose an executive in relation to allegations that the defendant corporation "discriminated against Plaintiff and other employees based on their race/color and failed to properly compensate Plaintiff and other employees for overtime work." *Id.* at *1.   Because the executive had "no more than a general understanding of Defendant's policies, procedures, and practices," and because "decisions regarding implementation of policies and procedures [were] made at the local level," the court granted a protective order preventing his deposition. *Id.* at *3.   Like the executive in *Tompkins*, Mr. Dunn lacks direct knowledge of the facts related to Plaintiff's overtime and retaliation allegations under the FLSA. *Id.* at *5.

**B.    The Apex Doctrine Requires Harapeti to Make an Effort to Obtain The Information Sought from Mr. Dunn Through Less Burdensome Means; She Has Not Done So Here.**

As a threshold point, it is unclear what relevant testimony Harapeti hopes to obtain from Mr. Dunn.  Regardless, Harapeti has not exhausted other avenues of discovery available to her before seeking to depose an executive such as Mr. Dunn.

Despite the fact that the Florida Action has been pending for over a year and discovery is only two weeks from closing, Harapeti has made no effort to take the deposition of a corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Where the party seeking the deposition of a high-ranking executive has not yet deposed a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6), the second element of the apex doctrine is generally not satisfied.  In *Reif v. CNA*, for example, the court denied a motion to compel the executive's deposition ruling, *inter alia*, that the plaintiffs "must avail themselves of other discovery tools" such as a Rule 30(b)(6) deposition first.  *See* 248 F.R.D. at 454; *see also Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332, at *5 (M.D. Pa. June 17, 2021) (granting a motion to quash where "the information [p]laintiff seeks to learn from the current and former CEOs as to 'relevant issues about the case' can likely be obtained through lower level corporate officers by way of notice of deposition pursuant to Rule 30(b)(6)"); *Ciarrocchi v. Unum Grp.*, 2009 U.S. Dist. LEXIS 138532, at *8–9 (D.N.J. Aug. 27, 2009)

21

(denying motions to depose two of the defendants' executives where the plaintiffs had not yet deposed a Rule 30(b)(6) corporate designee).[14]

Movant previously offered a Rule 30(b)(6) corporate representative deposition, which would be the far less intrusive and burdensome means of obtaining additional information; however, Harapeti declined that offer. Instead, Harapeti now opts to burden Movant and a former top-level executive who has no connection to, or knowledge of any facts relevant to, the Florida Action. Nor has Harapeti made any effort to obtain the discovery through other less-intrusive methods, such as through interrogatories in the Florida Action. *See Ford Motor Co.*, 2011 U.S. Dist. LEXIS 67227, at \*12 (identifying interrogatories as one method of "less burdensome means"). The apex doctrine requires Harapeti to do more before reaching for the top of the proverbial pyramid. For this additional reason, the apex doctrine applies and the Subpoena should be quashed.

---

[14] Courts elsewhere, including in the Eleventh Circuit, have similarly protected executives from depositions where no Rule 30(b)(6) deposition has taken place. *See, e.g.*, *Brown*, 2014 U.S. Dist. LEXIS 7721, at \*10 (less intrusive means includes "deposing a Rule 30(b)(6) corporate representative and/or lower level employees"); *Skytruck Co. v. Sikorsky Aircraft Corp.*, No. 2:09-cv-267-FtM-99SPC, 2011 U.S. Dist. LEXIS 160482, at \*5 (M.D. Fla. May 11, 2011) (granting motion to protect the executive from deposition where defendant offered a Rule 30(b)(6) corporate representative and other employees with relevant knowledge for deposition).

## II.   TO THE EXTENT HARAPETI INTENDS TO RELY ON THE "SERVICE" OF THE FIRST SUBPOENA TO COMPEL MR. DUNN TO SIT FOR A DEPOSITION, SUCH SERVICE WAS INEFFECTIVE AND THE SUBPOENA SHOULD BE QUASHED.

As of this submission, Mr. Dunn has not been served with the Subpoena and is not known whether service efforts are underway.  However, it is not clear whether Harapeti contends that her "service" of the First Subpoena on August 4, 2021 is somehow sufficient to obligate Mr. Dunn to sit for a deposition pursuant to the Subpoena.  In the event that Harapeti does advance this untenable position, Movant notes that First Subpoena—and by extension, the Subpoena—should be quashed for the independent reason that Harapeti failed to personally serve Mr. Dunn with the First Subpoena, as is required in the Second Circuit.

Pursuant to Federal Rule of Civil Procedure 45, serving a subpoena "requires delivering a copy to the named person."  Fed. R. Civ. P. 45(b).  That rule has "long been interpreted by the majority of Courts in the Third District as requiring that an individual be personally served."  *See Myer v. Kuang*, No. 19-9385, 2021 U.S. Dist. LEXIS 54382, at *2–3 (D.N.J. Mar. 23, 2021) (collecting cases and denying motion for an order permitting service of a subpoena compelling the non-parties' deposition and production of documents *via* mail instead of by personal service).  This Court has repeatedly acknowledged that, "[u]nlike service of a summons and complaint, personal service is required when serving a subpoena."  *See Farley-Skinner v. Adventure Aquarium, LLC*, No. 1:17-cv-04797-RBK-KMW, 2018 U.S. Dist. LEXIS

128847, at *3–4 (D.N.J. Aug. 1, 2018) (service of subpoena by certified mail did not comport with the personal service requirement of Rule 45(b)(1), since courts "interpret[] the word 'delivering' in [that rule] literally"); *see also Trs. of the Int'l Union v. J.T. Cleary, Inc.*, No. 17-5962 (ES) (MAH), 2018 U.S. Dist. LEXIS 69966 at *3–4 (D.N.J. Apr. 26, 2018) (acknowledging Rule 45(b)(1)'s "personal service requirement"); *Vitale v. Repetti*, No. 05-5685 (PGS) (ES), 2007 U.S. Dist. LEXIS 43839, at *5 (D.N.J. June 18, 2007) (holding that a party "failed to comply with the personal service requirement of Rule 45(b)(1) by mailing the subpoenas").

Here, Harapeti attempted to "serve" the First Subpoena on Mr. Dunn by handing it to an individual who answered the door to his residence. *See* **Ex. D**, Dunn Decl., at ¶ 8. Mr. Dunn was not, in any sense, "personally served" with the Subpoena. *See id.* Courts in this Circuit routinely quash subpoenas where, as here, the subpoena was not "deliver[ed] to the named person." For example, in *Fiorentino v. Cabot Oil & Gas Corporation*, a court in this Circuit quashed subpoenas that, among other deficiencies, were left at a place of employment or "handed to a movant's spouse at the movant's residence." *See Fiorentino v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2012 U.S. Dist. LEXIS 194219, at *19–20 (M.D. Pa. Jan. 6, 2012); *see also Havens v. Mar. Commc'ns/Land Mobile, LLC*, Civ. No. 11-993 (KSH) (CLW), 2014 U.S. Dist. LEXIS 68786, at *3, *12 (D.N.J. May 20, 2014) (quashing trial subpoenas in part where counsel handed them to opposing counsel);

24

*Young v. Pleasant Valley Sch. Dist.*, No. 3:07-CV-854, 2011 U.S. Dist. LEXIS

46172, at *2 (M.D. Pa. Apr. 29, 2011) (leaving subpoenas with a woman at the "front

desk" did not constitute personal service under Rule 45(b)(1)); *Yarus v. Walgreen*

*Co.*, No. 14-cv-1656, 2015 U.S. Dist. LEXIS 86247, at *12, n.7 (E.D. Pa. July 1,

2015) (finding it "not entirely clear" that Defendants "meticulously complied" with

Rule 45's service requirements where the subpoena was first left in the mailbox and

later "signed for" by someone besides the non-party, and where a later order

directing the non-party to appear for deposition was accepted by someone Harapeti

believed to be the non-party's brother).  Under this guiding precedent, leaving the

First Subpoena with an individual at Mr. Dunn's residence does not comport with

Rule 45, which has "long been interpreted by the majority of Courts in the Third

District" as requiring personal service on the individual.  *Myer*, 2021 U.S. Dist.

LEXIS 54382, at *2–3.  Accordingly, this Court should quash the First Subpoena to

the extent Harapeti intends to rely on it to accomplish service, as such service was

plainly noncompliant with Rule 45(b)(1) and this Circuit's precedent.[15]

---

[15] To be clear, under this Circuit's majority view, Plaintiff's deficient service is not
cured by the fact that Mr. Dunn ultimately was notified of the existence of the First
Subpoena.  *See Vitale*, 2007 U.S. Dist. LEXIS 43839, at *6 (holding that the
defendant could not demonstrate that the subpoenas served by mail "were
enforceable in the first instance" and rejecting defendant's "position that, if the party
subpoenaed acknowledged receipt of the subpoena, the Rule is satisfied" (quotations
and citations omitted)).

## <u>CONCLUSION</u>

Both the First Subpoena and the Subpoena are substantively infirm—it is clear that Harapeti's attempt to take Mr. Dunn's deposition runs afoul of the apex doctrine and is an overt attempt at harassment given the complete absence of a nexus between the issues presented in the Florida Action and the knowledge Mr. Dunn possesses. Mr. Dunn has confirmed, as did all of the other deponents in the Florida Action, that Mr. Dunn has no "unique or personal knowledge" of the facts underpinning Harapeti's allegations in the Florida Action.  Harapeti has also made no effort to obtain whatever information she believes Mr. Dunn possesses through less intrusive means.   The law is clear that courts "have the discretion to prevent oppressive, harassing, inconvenient, and burdensome depositions of executive officials." *Reif*, 248 F.R.D. at 453.  Pursuant to the apex doctrine, Mr. Dunn's deposition is presumptively burdensome and harassing, and the record confirms that the protections of the apex doctrine to Mr. Dunn, a non-party who possesses no unique knowledge of—and whose executive responsibilities were not tethered to—any facts relevant to Harapeti's allegations in the Florida Action.  Moreover, as of this writing, Harapeti failed to personally serve Mr. Dunn as required under Rule 45.

For the foregoing reasons, CBS respectfully requests that the Court grant this Motion, quash both the First Subpoena and the Subpoena under Rule 45 and/or enter

a protective order pursuant to Rule 26, and grant such other and further relief as the

Court deems just and proper under the circumstances.

Respectfully submitted this 18th day of August, 2021.

BAKER & MCKENZIE LLP
*Attorneys for CBS Television Stations, Inc.*
452 Fifth Avenue
New York, NY 10018
Telephone: (212) 626-4100
Facsimile: (212) 310-1632

By:  /s/ *Blair J. Robinson*
Blair J. Robinson, Esq.
New Jersey Bar No. 040712004
blair.robinson@bakermckenzie.com

Paul C. Evans, Esq.
New Jersey Bar No. 121064946
paul.evans@bakermckenzie.com

## <u>CERTIFICATE OF GOOD FAITH</u>

Pursuant to Local Rule 37.1, I, BLAIR ROBINSON, undersigned counsel for Movant, certify that I have conferred with Harapeti's counsel, Peter Hoogerwoerd, in the Florida Action, Case No. 20-cv-20961-KMW (S.D. Fla.), in a good faith effort to resolve the issues raised by the attached Motion as set forth in my declaration attached to this Motion as **Exhibit C**, at ¶ 9, and have been unable to do so.

By:  _/s/ Blair J. Robinson_____
Blair J. Robinson, Esq.

28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 18, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via email.

By: /s/ *Blair Robinson*
Blair J. Robinson, Esq.

## SERVICE LIST

**IN RE: MOTION TO QUASH SUBPOENA
FOR DEPOSITION SERVED ON PETER DUNN**

**CASE NO. _____**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

Related Case Pending in the United States District Court
for the Southern District of Florida styled *Silva Harapeti
v. CBS Television Stations Inc., et al.*, No. 20-cv-22995-KMW

Peter M. Hoogerwoerd, Esq.
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
pmh@rgpattorneys.com
Phone: (305) 416-5000
Facsimile: (305) 416-5005
*Attorney for Silva Harapeti*